Knight
*v.*
Dorr.

## CYRUS ALGER *versus* GEORGE C. THACHER.

A bond conditioned, that the obligor shall never carry on, or be concerned in, the business of founding iron, is void.

DEBT upon a bond dated August 6th, 1833. Upon oyer it appeared, that the bond, after reciting that the plaintiff had purchased of the defendant 337 shares in the stock of the South Boston Iron Company, and had paid to him a certain large sum of money, was conditioned, that the defendant should not, " at any time hereafter, in his own name, or in the name of another, conduct, carry on, use or employ the art, trade or occupation of an iron founder or caster, or be concerned, interested, employed or engaged, directly or indirectly, in any, manner whatsoever, or under any pretence whatsoever, in the business of founding or casting of iron."

The defendant demurred generally to the declaration.

*C. G. Loring* and *F. C. Loring*, for the defendant, cited 1 Story on Eq. § 292 ; Platt on Covenants, 571 ; Hurlst. on Bonds, 14 ; *Homer* v. *Ashford*, 3 Bingh. 326 ; *Mitchel* v. *Reynolds*, 1 P. Wms. 181 ; *Gale* v. *Reed*, 8 East, 80.

*Parsons* and *Stearns*, for the plaintiff, cited Year Book, 2 H. 5. 5. 26 ; Moore, 115, *pl.* 259 ; Ibid. 242, *pl.* 379 ; *S. C.* 3 Leon. 217 ; *Colgate* v. *Bacheler*, Cro. Eliz. 872 ; *S. C.* Owen, 143 ; *Rogers* v. *Parry*, 2 Bulstr. 136 ; *Jelliet* v.

*March 17th*

*Broade*, Noy, 98 ; *Prudenell* v. *Goss*, Alleyn, 67 ; *Clerk*
v. *Taylors of Exeter*, 3 Lev. 241 ;. *Mitchel* v. *Reynolds*,
1 P. Wms. 181 ; *S. C.* Lucas, 67, 85, 130 ; *S. C.* For-
tescue, 296 ; *Chesman* v. *Nainby*, 2 Strange, 739 ; *Davis* v.
*Mason*, 5 T. R. 118 ; *Bunn* v. *Guy*, 4 East, 190 ; *Gale* v.
*Reed*, 8 East, 80 ; *Bryson* v. *Whitehead*, 1 Sim. & Stu. 94 ;
*Peirce* v. *Fuller*, 8 Mass. R. 223 ; *Perkins* v. *Lyman*, 9
Mass. R. 530 ; *Stearns* v. *Barrett*, 1 Pick. 450 ; *Palmer* v.
*Stebbins*, 3 Pick. 188 ; *Noble* v. *Bates*, 7 Cowen, 307 ; *Pierce*
v. *Woodward*, 6 Pick. 206.

*March* 20*th.*      MORTON J. delivered the opinion of the Court. The point
for our decision is the validity of the bond declared on. The
oyer spreads the instrument on the record and virtually makes
it a part of the declaration. And the demurrer presents dis-
tinctly and in the best possible form, the question whether
upon its face it appears to be a legal and valid obligation. 1
Chit. Pl. 416 ; 1 Saund. 10 ; *Dorr* v. *Fenno*, 12 Pick. 521.

The objection to the bond arises from the following clause,
by which the defendant binds himself never hereafter " *in his
own name or in the name of another, to conduct, carry on, use,
or employ the art, trade or occupation of an iron founder or
caster, or be concerned, interested, employed or engaged, di-
rectly or indirectly, in any manner whatsoever, or under any
pretence whatsoever, in the business of founding or casting of
iron.*" This stipulation is too clear and explicit to be misun-
derstood. It will admit of but one construction. It purports
to exclude the defendant, everywhere and at all times, from a
participation in the trade or business referred to. Such a con-
tract, the defendant contends, is against sound policy and con-
trary to established principles of law.

Among the most ancient rules of the common law, we find
it laid down, that bonds in restraint of trade are void. As
early as the second year of Henry V. (A. D. 1415) we find
by the Year Books, that this was considered to be old and
settled law. Through a succession of decisions, it has been
handed down to us unquestioned till the present time. It is
true, the general rule has, from time to time, been modified and
qualified, but the principle has always been regarded as impor-
tant and salutary.

For two hundred years, the rule continued unchanged and without exceptions. Then an attempt was made to qualify it by setting up a distinction between sealed instruments and simple contracts. But this could not be sustained upon any sound principle. A different distinction was then started, between a *general* and a *limited restraint* of trade, which has been adhered to down to the present day. This qualification of the general rule may be found as early as the eighteenth year of James I., A. D. 1621, *Broad* v. *Jollyffe*, Cro. Jac. 596, when it was holden, that a contract not to use a certain trade in a particular place, was an exception to the general rule and not void. And in the great and leading case on this subject, *Mitchel* v. *Reynolds*, reported in Lucas, 27, 85, 130, Fortescue, 296, and 1 P. Wms. 181, the distinction between contracts under seal, and not under seal, was finally exploded and the distinction between limited and general restraints fully established. Ever since that decision, contracts in restraint of trade generally, have been held to be void ; while those limited as to time or place or persons, have been regarded as valid and duly enforced. Whether these exceptions to the general rule were wise and have really improved it, some may doubt ; but it has been too long settled to be called in question by a lawyer.

This doctrine extends to all branches of trade and all kinds of business. The efforts of the plaintiff's counsel to limit it to handicraft trades, or to found it on the English system of apprenticeship, though enriched by deep learning and indefatigable research, have proved unavailing. In England, the law of apprenticeship and the law against the restraint of trade, may have a connexion. But we think it very clear that they do not, in any measure, depend upon each other.

That the law under consideration has been adopted and practised upon in this country and in this State, is abundantly evident from the cases cited from our own reports. It is reasonable, salutary and suited to the genius of our government and the nature of our institutions. It is founded on great principles of public policy and carries out our constitutional prohibition of monopolies and exclusive privileges.

5*

The unreasonableness of contracts in restraint of trade and business, is very apparent from several obvious considerations.

1. Such contracts injure the parties making them, because they diminish their means of procuring livelihoods and a competency for their families. They tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions. And they expose such person to imposition and oppression.

2. They tend to deprive the public of the services of men in the employments and capacities in which they may be most useful to the community as well as themselves.

3. They discourage industry and enterprise, and diminish the products of ingenuity and skill.

4. They prevent competition and enhance prices.

5. They expose the public to all the evils of monopoly. And this especially is applicable to wealthy companies and large corporations, who have the means, unless restrained by law, to exclude rivalry, monopolize business and engross the market. Against evils like these, wise laws protect individuals and the public, by declaring all such contracts void.

In the latest case which we have examined, *Homer* v. *Ashford*, 3 Bingh. 319, the English law is thus laid down by C. J. *Best.* " The law will not permit any one to restrain a person from doing what the public and his own interest require that he should do. Any deed therefore, by which a person binds himself not to employ his talents, his industry or his capital in any useful undertaking in the kingdom, would be void ; because no good reason can be imagined for any person imposing such a restraint on himself. But it may often happen, that individual interest and general convenience may render engagements not to carry on trade or to act in a profession in a particular place, proper." As to what shall be deemed a reasonable limitation, there is, and from the nature of things, can be, no definite rule. It must depend on the circumstances of each particular case, and the good sense and sound discretion of the tribunal which may have the case to settle. It would be out of place now to investigate it. There is no limitation as to time, place or person. The restraint is perpetual and universal. And if the doctrine be in force in this

country and can apply to any case, we think it must include the one now before us.  In addition to the numerous authorities cited by the counsel, we have examined and referred to the following.  *Clarke* v. *Comer*, Cas. Temp. Hardw. 53 ; *Chesman* v. *Nainby*, 2 Ld. Raym. 1456 ; *S. C.* 3 Bro. Parl. Cas. 349 ; *Freemantle* v. *Co. of Silk Throwsters*, 1 Lev. 229 ; *Cuddon* v. *Eastwick*, Salk. 193 ; *Harrison* v. *Godman*, 1 Burr. 12 ; *Peirce* v. *Bartram*, Cowp. 269 ; *Gunmakers of London* v. *Fell*, Willes, 384 ; *Harrison* v. *Gardner*, 2 Madd. R. 198 ; *Shackle* v. *Baker*, 14 Ves. 468 ; *Morris* v. *Coleman*, 18 Ves. 468 ; *Crutterell* v. *Lye*, 17 Ves. 336.

*Judgment for the defendant on the demurrer.*